**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UMG Recordings, Inc., *et al.* )<br><br>)<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>Frontier Communications )<br>Corporation, )<br>)<br>)<br>Defendant. )<br>) | Civ. Case No. 1:21-cv-5050-AT<br>*Related cases*: 1:21-cv-05253-AT<br>and 1:21-cv-05708-AT |

**DEFENDANT FRONTIER COMMUNICATIONS CORPORATION'S**
**REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS MOTION TO STAY**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

I.      Although Plaintiffs Were Not Required to File Claims in the Bankruptcy Court, They Chose to do so, and now are Reversing Course in an Overt Attempt to Forum Shop.................................................................................................................. 2

II.     The Case Should be Stayed if the Motions to Withdraw the Reference are Denied .......... 5

III.    The First-to-File Rule Requires a Stay of the District Court Litigation if the Motions to Withdraw the Reference Are Denied ............................................................ 13

CONCLUSION.................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*,
  630 F. Supp. 2d 295 (S.D.N.Y. 2009)......................................................................7

*Germain v. Connecticut National Bank*,
  988 F.2d 1323 (2d Cir. 1993).............................................................................11

*In re Adelphia Commc'ns Corp.*,
  307 B.R. 404 (Bankr. S.D.N.Y. 2004)...................................................................4

*In re Amfesco Industries, Inc.*,
  1988 U.S. Dist. LEXIS 13227 (Bankr. E.D.N.Y. Nov. 14, 1988)...........................9

*In re Charter Commc'ns, Inc.*,
  691 F.3d 476 (2d Cir. 2012)................................................................................9

*In re China Fishery Grp. Ltd. (Cayman)*,
  2017 Bankr. LEXIS 2017 (Bankr. S.D.N.Y. July 19, 2017) ...............................1, 4

*In re Enron Power Mktg., Inc.*,
  No. 01 CIV.7964, 2003 WL 68036 (S.D.N.Y. Jan. 8, 2003)................................12

*In re Genco Shipping & Trading Ltd.*,
  513 B.R. 233 (Bankr. S.D.N.Y. 2014)...................................................................4

*In re Karta Corp.*,
  342 B.R. 45 (S.D.N.Y. 2006).................................................................................4

*In re Kenai Corp.*,
  136 B.R. 59 (S.D.N.Y. 1992)..........................................................................12, 13

*In re Manville Forest Prod. Corp.*,
  896 F.2d 1384 (2d Cir. 1990)...............................................................................4

*In re MF Glob. Holdings Ltd.*,
  562 B.R. 55 (Bankr. S.D.N.Y. 2017)....................................................................6

*In re Murray Energy Holdings Co.*,
  Case No. 19-56885 (JEH) (Bankr. S.D. Ohio) (Nov. 4, 2020)............................8

*In re Orion Pictures Corp.*,
  4 F.3d 1095 (2d Cir. 1993).................................................................................10

*Langenkamp v. Culp*,
    498 U.S. 42 (1990) ......................................................................................13

*McCord v. Papantoniou*,
    316 B.R. 113 (E.D.N.Y. 2004) .....................................................................12

*Schnabel v. Ramsey Quantitative Sys., Inc.*,
    322 F. Supp. 2d 505 (S.D.N.Y. 2004).........................................................14

*Stern v. Marshall*,
    564 U.S. 462 (2011).......................................................................................5

**Statutes**

28 U.S.C. § 157(b)(1)(2)........................................................................................10

**Rules**

Bankruptcy Rule 2004 ....................................................................................14, 15

Bankruptcy Rule 7026 .............................................................................................8

Bankruptcy Rule 9014 .............................................................................................8

Bankruptcy Rules 7026, 7028-7037 ........................................................................8

Fed. R. Bankr. P. 7016(a) ........................................................................................8

Fed. R. Bankr. P. 7065.............................................................................................6

Fed. R. Bankr. P. 9014(c) ........................................................................................8

## INTRODUCTION

Plaintiffs gloss over the fundamental fact that they voluntarily filed the vast majority of their claims in the Bankruptcy Court, when they could have filed those claims in this Court from inception. Plaintiffs' chart on page 9 of their brief proves this point. In this chart, Plaintiffs admit that claims related to 7,677 works are pending before the Bankruptcy Court, and claims related to only 2,856 works are implicated in the case before this Court. (ECF No. 34, Opp'n at 9.) In fact, many of those 2,856 works are also the subject of bankruptcy claims, further highlighting the overlap and ability of the Bankruptcy Court to resolve pre-trial litigation issues common to claims across all the related cases. Most of the damages alleged by Plaintiffs purportedly arose prior to the commencement of Frontier's chapter 11 bankruptcy cases and thus were filed as general unsecured claims ("GUCs"), for which Plaintiffs request an aggregate amount of $248.25 million in damages. Plaintiffs do not dispute that there was no requirement to file these GUCs in the Bankruptcy Court. *See* Fifth Amended Chapter 11 Plan filed in Case No. 20-22476 (RDD) [hereinafter "Bankr. Dkt."], Dkt. No. 984] (the "Plan") Art.VII.A ("Holders of Claims need not File Proofs of Claim").

Plaintiffs' argument that the Plan's deadline to file administrative claims obviates their voluntary submission to the Bankruptcy Court's jurisdiction is equally unavailing. Courts have rejected similar arguments. *See, e.g., In re China Fishery Grp. Ltd. (Cayman)*, 2017 Bankr. LEXIS 2017, at *18-20 (Bankr. S.D.N.Y. July 19, 2017) (rejecting claimants' argument that a bar date order rendered "the submission of [its claims] effectively involuntary" because "in filing the[ir] [claims, the claimant] submitted itself to the jurisdiction of this Court"). Notwithstanding, Plaintiffs, on their own volition, decided to bring their claims first in Bankruptcy Court and now seek to reverse course without any real justification.

Frontier only requests a stay if the motions to withdraw the reference are denied. To summarize the various pending motions filed in this case and the related cases, there are two options presented by the parties: (1) Plaintiffs' and the Movie Companies' proposal that this Court grant the motions to withdraw the reference and deny the motion to stay; or (2) Frontier's proposal that this Court deny the motions to withdraw the Bankruptcy Court's reference and stay the present litigation so that the Court can take advantage of consolidated discovery and pre-trial proceedings already before the Bankruptcy Court.

The most prudent course of action is to deny the motions to withdraw and stay the present case. This would be the most efficient choice as it would allow the claims to be adjudicated by way of a streamlined, consolidated proceeding in Plaintiffs' original choice of forum, as contemplated by Congress when it enacted the Bankruptcy Code and designed the claims adjudication process. Staying Plaintiffs' later-filed, duplicative action in this Court also serves the interests of justice, as it would not reward Plaintiffs' forum shopping, and would permit efficient litigation where Plaintiffs' voluntarily-submitted claims have been pending for many months, instead of in one of the busiest district courts in the country. And contrary to Plaintiffs' assertions, the Bankruptcy Court has broad flexibility to provide the pre-trial procedures available in this Court and is eminently capable to do what Plaintiffs voluntarily requested the Bankruptcy Court to do: resolve their alleged copyright infringement claims against Frontier.

## BACKGROUND

### I.    Although Plaintiffs Were Not Required to File Claims in the Bankruptcy Court, They Chose to do so, and now are Reversing Course in an Overt Attempt to Forum Shop

Plaintiffs argue repeatedly that this Court is the only forum in which they can litigate all the copyright infringement claims currently pending. However, the claims that are the subject of the current lawsuit represent only a small tail of purported liability. The Bankruptcy Court not only

has the jurisdiction to adjudicate the Bankruptcy claims, but the Bankruptcy Court's findings regarding those claims may be dispositive of the claims pending before this Court.

Plaintiffs' intentional decision to file claims in the Bankruptcy Court, then to file this suit while the bankruptcy claims were pending (which claims are still the subject of a claims objection by Frontier), remains the singular genesis of the inefficiencies about which Plaintiffs complain. Were this Court to sanction such conduct, nothing would prevent parties from first testing the waters in Bankruptcy Court by filing proofs of claim, then fishing for discovery in aid of their claims while simultaneously suing in district court to see which forum they like better. In this vein, parties can always argue that the district court has jurisdiction to consolidate and hear litigation pending in a bankruptcy court in the same district.

After filing their proofs of claim in the bankruptcy court, Plaintiffs repeatedly threatened to invoke the Bankruptcy Court's authority to compel discovery under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and when the time came to proceed toward a litigation schedule, they did an about-face and sued in the District Court. Plaintiffs cannot now make efficiency arguments given that they chose to pursue their claims in the Bankruptcy Court then created the inefficiencies they purport to have a solution for. This is blatant forum shopping, and the Court should not let this case stand as a blueprint for other parties who wish to sample judges or gain an unfair advantage by proceeding for months in one forum before deciding whether to litigate in another.

Plaintiffs were not forced to litigate in the Bankruptcy Court. Plaintiffs filed their proofs of claim asserting pre-petition GUCs, after confirmation of the Plan but before Frontier's emergence from chapter 11. Plaintiffs concede that they had free rein to litigate their GUCs

wherever they wanted but chose to do so in the Bankruptcy Court. (ECF No. 34, Opp'n. at 2.) This alone is reason to reject Plaintiffs' arguments.

As a fallback, Plaintiffs argue that they were forced to file administrative claims pursuant to the Plan or risk having those claims barred by not filing them before the administrative claims bar date, June 1, 2021. (ECF No. 34, Opp'n. at 6-7, 11.) However, Courts have held that parties voluntarily submit to the bankruptcy court's jurisdiction by filing proofs of claim even when there was a deadline to do so. *See China Fishery*, 2017 Bankr. LEXIS, at 18-19; *see also In re Adelphia Commc'ns Corp.*, 307 B.R. 404, 418 (Bankr. S.D.N.Y. 2004) (finding that "when the Copyright Owners filed proofs of claim in the bankruptcy court, they submitted to the equitable jurisdiction of this Court, especially with respect to the very subject matter of their claims"—notwithstanding the existence of a bar date in debtors' bankruptcy cases); *In re Manville Forest Prod. Corp.*, 896 F.2d 1384, 1389-90 (2d Cir. 1990) (finding that a creditor, by filing a proof of claim, submits itself to the equitable power of bankruptcy court to disallow its claim—notwithstanding the existence of a bar date in the debtors' bankruptcy cases). Plaintiffs, therefore, have invoked and submitted to the Bankruptcy Court's jurisdiction by filing these claims regardless of the unimpaired status of GUCs or the presence of an administrative claims bar date.

Further, even if Plaintiffs believed the administrative claims bar date forced them to file their administrative claims, nothing prevented Plaintiffs from seeking an exemption or relief from the administrative claims bar date. The Bankruptcy Code and applicable law provide claimants like Plaintiffs the opportunity to object to the provisions of a chapter 11 plan of reorganization before the plan is confirmed. *See, e.g.*, *In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 272 (Bankr. S.D.N.Y. 2014) (adjudicating plan objection to third-party release provisions in plan and narrowing scope of such releases accordingly); *In re Karta Corp.*, 342 B.R. 45, 57 (S.D.N.Y. 2006)

(granting relief from overly broad release provisions in plan). Plaintiffs did not object to confirmation of the Plan, nor did they participate in the chapter 11 cases until they filed their proofs of claim in January 2021, nearly four months after the Plan was confirmed. Even after this, Plaintiffs did not move the Bankruptcy Court or this Court for relief from the administrative claims bar date and instead waited until Frontier objected to their claims in the Bankruptcy Court to file a duplicate proceeding in the district court.

Though this argument related to the administrative claims has no merit, it should not even be considered given that Plaintiffs were not forced to file GUCs and continue litigation in the Bankruptcy Court. Plaintiffs, on their own volition, submitted to the jurisdiction of the Bankruptcy Court, and the fact there is an administrative claims bar date does not render their submission to and invocation of the Bankruptcy Court's jurisdiction any less effective. *See Stern v. Marshall*, 564 U.S. 462, 487, 496 (2011) (quoting *Katchen v. Landy*, 382 U.S. 332 n.9 (1966)).

Plaintiffs simply offer no explanation as to why they invoked the Bankruptcy Court's jurisdiction and proceeded in the Bankruptcy Court for months, including exchanging discovery related to their claims. Instead, they concede that they could have filed these claims in any forum, but selected Bankruptcy Court. (ECF No. 34, Mem. at 2.) Plaintiffs' decision to bring claims in the Bankruptcy Court was an intentional, strategic choice by sophisticated parties represented by capable counsel. This Court, therefore, should deny the pending motions to withdraw the reference and stay the above-captioned case so as not to allow Plaintiffs' blatant forum shopping.

## II.     The Case Should be Stayed if the Motions to Withdraw the Reference are Denied

Plaintiffs' opposition to the motion to stay continues to lob meritless assertions for why this Court should grant their motions to withdraw. Frontier's motion seeks to stay Plaintiffs' later-filed litigation in this Court *only if this Court denies Plaintiffs' and the Movie Companies' Motions to Withdraw*. All of Plaintiffs' arguments are really arguments about whether the Court

should grant their motion to withdraw the Bankruptcy Court's reference, not whether this case should be stayed if the Court denies the pending motions to withdraw the Bankruptcy Court's reference. What little arguments Plaintiffs make relating to the stay are unsupported, without merit, and appear to be after-the-fact attempts to justify Plaintiffs' overt forum shopping.

First, Plaintiffs argue that the Bankruptcy Court cannot grant injunctive relief. (ECF No. 34, Opp'n at 10.) This is wrong. The Bankruptcy Court has jurisdiction to grant such relief in core proceedings, and, as noted in earlier briefing, the bankruptcy claims filed by Plaintiffs are core. *See* Fed. R. Bankr. P. 7065 (noting that the procedures for obtaining injunctive relief in civil cases are available in adversary proceedings in bankruptcy); *see also*, *e.g.*, *In re MF Glob. Holdings Ltd.*, 562 B.R. 55, 64 & 67 (Bankr. S.D.N.Y. 2017) (noting that a bankruptcy court can issue injunctions and granting request for injunctive relief). The GUCs and other bankruptcy claims raise the same issues of secondary copyright liability as the claims in this Court. Thus, if the Bankruptcy Court were to find Frontier liable, it could issue injunctive relief which would apply equally to the claims before this Court. Though the claims in this Court might involve different works allegedly downloaded by different Frontier subscribers, different subscribers are not the defendants in these related cases. Frontier is the single Defendant. If Plaintiffs were to overcome the significant problems with the substantive merits of their case, any injunctive relief ordered in the bankruptcy cases against Frontier would be applied company-wide, thereby affecting all of Frontier's operations and subscribers and equally benefitting Plaintiffs before this Court.

Second, Plaintiffs again and inexplicably claim that they will not have their day in court. (ECF No. 34, Opp'n at 10.) No support is provided for this argument. As noted in Frontier's opening brief, Plaintiffs will have their day in court—and that day is likely to occur more promptly in the Bankruptcy Court than in any other forum. A stay of this case would simply allow

adjudication of Plaintiffs' claims to proceed in a more efficient and streamlined manner in Plaintiffs' first chosen forum—the Bankruptcy Court—so that judicial resources are not wasted and attempts at forum shopping are not rewarded. This Court could then apply the pretrial rulings in the Bankruptcy Court to this case and forgo discovery issues and other onerous pre-trial litigation common across all cases that would have already been resolved in the Bankruptcy Court. Plaintiffs do not dispute that these related cases arise out of the same common nucleus of facts and legal issues such that the Court can apply pre-trial rulings from the Bankruptcy Court to the case pending in this Court. (*See id.* at 15 (noting that the issues in the related cases present "nearly identical factual and legal issues")).)

Third, Plaintiffs do not hide from their forum shopping when they now argue that this Court is "uniquely suited to address copyright claims," because "New York District Courts had the second-highest number of copyright case filings of any state." (*Id.* at 15.) Nowhere does the amount of copyright cases filed in this District factor into the stay analysis. *See Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009). Plaintiffs chose the Bankruptcy Court. Now, not liking their first forum choice and having proceeded in that forum for months, they openly discuss reasons why they favor this Court which are not connected to the factors this Court must weigh in deciding whether to grant a stay.

Fourth, having abandoned any principled discussion as to what would be the most efficient forum pursuant to the factors controlling the stay analysis, Plaintiffs suggest that they want this Court to adjudicate this case so that they can have nine months to two years of discovery. (*Id.* at 16.) Plaintiffs even go as far as to criticize Frontier for asking for the most efficient and prompt adjudication of Plaintiffs' claims. (*Id.*) They are simply on the wrong side of the stay analysis which considers plaintiff's interest "in proceeding ***expeditiously***," not a plaintiff's interest in

having long, drawn out, and costly proceedings. *See Catskill*, 630 F. Supp. 2d at 304 (emphasis added). Additionally, Plaintiffs have the same rights to propose to the Bankruptcy Court, as they would in this Court, whatever discovery and litigation schedule they prefer, which would be subject to no different scrutiny than this Court would apply to any proposed litigation and discovery schedule filed with this Court. Indeed, the Plan allows for a flexible claims adjudication process, and Bankruptcy Rule 9014 applies, among other things, Bankruptcy Rules 7026, 7028-7037 to contested matters with some limited exceptions that can be addressed by the parties or Bankruptcy Court. Bankruptcy Rule 7026 in turn provides that "Rule 26 F. R. Civ. P. applies in adversary proceedings." Fed. R. Bankr. P. 7016(a). Thus, the Bankruptcy Rules preserve and provide the parties the opportunity to avail themselves of discovery tools available under the Federal Rules of Civil Procedure. *See* Fed. R. Bankr. P. 9014(c); *In re Murray Energy Holdings Co.*, Case No. 19-56885 (JEH) (Bankr. S.D. Ohio) (Nov. 4, 2020) (granting stipulation and order providing for exchange of expert reports by the parties and setting a subsequent briefing schedule).

Fifth, Plaintiffs again raise the strange argument that unidentified "third party copyright owners" "monitoring" this litigation would favor adjudication in this Court so they can understand any injunctive relief that is granted. (ECF No. 34, Opp'n at 18.) Plaintiffs do not say how they know this and therefore this suggestion is based upon mere speculation. If these hypothetical third parties are represented by the same counsel as Plaintiffs here, they will undoubtedly get firsthand updates on the proceedings in any court. In any event, Plaintiffs fail to respond to Frontier's argument that these parties can just as easily monitor the Bankruptcy Court litigation, as all pleadings and orders in Frontier's chapter 11 cases are available online. (*See* ECF No. 33, Mem. at 18.) Thus, unidentified "third party copyright owners" can just as easily monitor what injunctive relief, if any, is granted or denied by the Bankruptcy Court.

Sixth, Plaintiffs venture into the merits by arguing that the public is interested in thwarting copyright infringement. Frontier has not been found liable for infringement, which is, in any event, an issue to be resolved on the merits. Frontier could just as easily assert that because it believes it will not be found liable, the case should proceed most efficiently in the Bankruptcy Court. The Bankruptcy Court can vindicate the merits of copyright infringement claims filed in the Bankruptcy Court to the fullest extent that this Court can. S*ee In re Amfesco Industries, Inc.*, 1988 U.S. Dist. LEXIS 13227, at *5 (Bankr. E.D.N.Y. Nov. 14, 1988) (denying motion to withdraw reference where "[w]hile it is arguable that any determination of whether a copyright has been violated requires an interpretation of the copyright laws, such an argument could be raised when any statute is being applied . . . [but] there is a large body of law which may be read and analyzed as readily by a bankruptcy judge"). The merits simply are not a factor in the stay analysis.

Seventh, Plaintiffs argue that the Bankruptcy Court's reference should be withdrawn because bankruptcy court rulings are subject to *de novo* review and "not necessarily by Your Honor" (ECF No. 34, Opp'n at 12). This argument is, at best, a truism that is wholly unpersuasive and has no force here. "Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law *de novo*." *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482-83 (2d Cir. 2012) (citing Bankruptcy Rule 8013). Regardless, Plaintiffs' argument that the district courts' mandate to review decisions of the bankruptcy court, requires the district court to withdraw the reference is flawed. By this logic, federal bankruptcy courts (and Magistrates for that matter) may as well not exist since virtually all decisions by those courts are subject to review by the next highest court.

Congress and federal district courts have delegated the adjudication of core bankruptcy proceedings like the ones implicated here to bankruptcy courts in the first instance for reasons

related to judicial efficiency, despite the fact that the bankruptcy courts' decisions on those claims are appealable to the district court. *See* 28 U.S.C. § 157(b)(1)(2); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993) ("[H]earing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues[.]"). With regard to a bankruptcy appeal not being heard by the same judge, the related case rulings in this case or future requests would ensure that the same judge hears any related matters. *See* S.D.N.Y. R. Div. of Bus. Dist. J. 13 (b)(2) ("A case, bankruptcy appeal, or motion to withdraw the bankruptcy reference that is designated as related shall be forwarded to the judge before whom the allegedly related case, appeal or motion having the lowest docket number is or was pending, who shall decide whether to accept or reject the case.").

Eighth, Plaintiffs oddly claim that Frontier "failed to schedule the status conference with the judge in the Bankruptcy Court requested" following any proposed mediation and exchange of informal discovery. This is not so. Judge Drain simply requested a status conference to be kept apprised of the parties' progress, and Frontier filed a notice with the Bankruptcy Court indicating that there was no need for a hearing or status conference because there was no new update to provide regarding the parties' litigation. *See* Bankr. Dkt. No. 1968 ("The Reorganized Debtors will update the Bankruptcy Court and parties in interest once the District Court has rendered a decision on the Motions to Withdraw and Motion to Stay."). Plaintiffs never objected to this notice, and Judge Drain did not request or require the parties to participate in a status conference after this notice was filed. The parties have also been sending copies of pleadings filed in this Court to keep Judge Drain apprised. If anything, the briefing exercise on the motion to stay reveals how involved the Bankruptcy Court has been in the parties' dispute and how wasteful it would be to withdraw the Bankruptcy Court's reference.

10

Frontier further notes, in response to Plaintiffs' mischaracterizations of proceedings in the Bankruptcy Court, that it is simply untrue that Frontier did not provide discovery to Plaintiffs. Frontier voluntarily provided voluminous informal discovery to Plaintiffs, including copious amounts of raw data that Plaintiffs had requested. Also, it is not true that Plaintiffs provided all the discovery promised to Frontier. Frontier on May 20, 2021, among other dates, pointed out deficiencies and gaps in Plaintiffs' production which have not been addressed. The fact that Plaintiffs are already quibbling about discovery before Frontier has even responded to the complaint or a single formal discovery request has been served foreshadows that Plaintiffs' proposed course of action would guarantee that two judges, not just one, would be drawn into a formidable quagmire of contentious and nitpicking discovery disputes.

Finally, Plaintiffs' argument about jury trial rights being encroached upon is without merit. They have waived their rights to a jury for claims filed in Bankruptcy Court. This has been addressed in the briefing on the motions to withdraw the reference in the related cases and in the motion to stay. Plaintiffs attempt to distinguish the long line of cases cited by Frontier on the grounds that the bankruptcy claims here implicate a chapter 11 Plan which provides for certain claims in full, as opposed to other plans which only aim to partially pay claims. Plaintiffs, however, cite no authority providing that the waiver of jury trial rights in bankruptcy proceedings do not apply to proceedings where bankruptcy claims will be paid in full. The only new case cited is *Germain v. Connecticut National Bank*, 988 F.2d 1323, 1329 (2d Cir. 1993), which observed that "a creditor . . . who submits to the equity jurisdiction of the bankruptcy court thereby waives any right to a jury trial for the resolution of disputes vital to the bankruptcy process, such as those involving the determination of who is a valid creditor[.]" This case supports Frontier's position, not Plaintiffs'. Plaintiffs filed claims with the Bankruptcy Court to have the Bankruptcy Court

11

determine the validity and amount of such claims. Plaintiffs, therefore, have waived any rights to a jury trial and have consented to have the Bankruptcy Court make those determinations.

If Plaintiffs were right, all a party would have to do is utter the word "jury" in its motion to withdraw the Bankruptcy Court's reference and the motion would be granted. Yet there are scores of opinions in which courts have rightly denied motions to withdraw in cases in which a jury right existed in district court proceedings. *See, e.g.*, *McCord v. Papantoniou*, 316 B.R. 113, 126 (E.D.N.Y. 2004) ("Her motion rests primarily on her demand for a jury trial, and her lack of consent to a jury trial in the bankruptcy court. Those points fall short of demonstrating cause for this Court to withdraw reference."); *In re Enron Power Mktg., Inc.*, No. 01 CIV.7964, 2003 WL 68036, at *6 (S.D.N.Y. Jan. 8, 2003) (denying motion to withdraw reference and observing that "defendant's entitlement to a jury trial, in and of itself, does not compel immediate withdrawal of the reference"); *In re Kenai Corp.*, 136 B.R. 59, 61 (S.D.N.Y. 1992) (denying motion to withdraw reference and noting that "[a] rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and bankruptcy courts."). If Plaintiffs wanted a jury so badly, as they now claim they do, Plaintiffs would and should have filed a lawsuit in district court many months ago. No one but Plaintiffs made the decision to proceed in Bankruptcy Court; it was not thrust upon them.

The cases cited by Frontier in the briefing on the motions to withdraw the Bankruptcy Court's reference and in support of the motion to stay (*e.g.*, ECF No. 33, Mem. at 13) are left unrebutted, and nowhere do any of these cases say the waiver of jury trial rights is in any way related to whether claims are paid out partially or in full. Rather, it is the mere act of invoking and

submitting to the Bankruptcy Court's jurisdiction, exactly what occurred here, which results in waiver. *See, e.g.*, *Langenkamp v. Culp*, 498 U.S. 42, 45 (1990) ("Respondents filed claims against the bankruptcy estate, thereby bringing themselves within the equitable jurisdiction of the Bankruptcy Court. Consequently, they were not entitled to a jury trial[.]"). Any jury trial rights that might exist for any post-emergence claims filed with this Court would remain unaffected by a stay, as this Court could allow those claims to proceed to a jury trial, if warranted, immediately after the Bankruptcy Court resolves pre-trial issues in the related cases that are common to the claims in this Court. *See Kenai*, 136 B.R. at 61-62.

III.  **The First-to-File Rule Requires a Stay of the District Court Litigation if the Motions to Withdraw the Reference Are Denied**

Plaintiffs' argument on the first-to-file doctrine misses the mark. As stated above, if the motions to withdraw the reference are denied, there is little argument that the litigation should proceed first in the Bankruptcy Court and that this Court should stay the present case to take advantage of pre-trial rulings that would apply equally here. Plaintiffs do not seriously dispute and largely concede that the cases in the Bankruptcy Court present "nearly identical factual and legal issues." (ECF No. 34, Opp'n at 15.) If the motions to withdraw the reference are granted, however, then the most efficient course would be to litigate the claims in this Court.

The first-to-file rule and its reasoning apply here if the motions to withdraw the reference are denied, which would lead to concurrent lawsuits in federal court. Also, what Plaintiffs propose is moving all the copyright infringement claims against Frontier, including the ones filed in the Bankruptcy Court, to this Court. Thus, this raises the issue of two competing federal forums for the bankruptcy claims—the Bankruptcy Court where those claims were first filed, or this Court. Where there are two different federal courts that can exercise jurisdiction, as is the situation here, the Court should defer to the first forum, which in this case would be the Bankruptcy Court. *See*

*Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 510 (S.D.N.Y. 2004) ("Where there are two competing lawsuits, the first suit should have priority[.]"). As pointed out in Frontier's opening brief, the only difference here from a typical first-to-file situation is that Plaintiffs are arguing against their own first choice of forum. This makes the first-to-file rule even more compelling here, because a plaintiff looking to change forums in this manner is deliberately engaging in forum shopping, which is a principal issue that the first-to-file rule seeks to avoid.

Plaintiffs again try to claim they are not forum shopping, but their explanation is hard to follow. Plaintiffs claim that "they would have filed all of their claims in a single action before this Court," but "Plaintiffs were required to file the Administrative Claims in the Bankruptcy Court under compulsion of the Administrative Bar Date." (ECF No. 34, Opp'n at 22). Why then, did they file the GUCs in Bankruptcy Court, despite the fact they concede those claims did not need to be filed in the Bankruptcy Court? Why did they then threaten to compel discovery under Bankruptcy Rule 2004, proceed with informal discovery subject to the protective order in Frontier's chapter 11 cases, demand documents, and continue pursuing their claims for months in the Bankruptcy Court without raising any issues with this Court or any other court related to the administrative claims bar date? Why did they not file a lawsuit in this Court first, or contemporaneously with their claims in Bankruptcy Court? Why did Plaintiffs change their minds? Plaintiffs' position raises more questions than answers.

Plaintiffs do not provide answers to these questions because there is no logical explanation. Plaintiffs voluntarily filed proofs of claim in the Bankruptcy Court. If Plaintiffs wanted to litigate before this Court all along, they should have simply filed suit in this Court to begin with. Frontier respectfully submits that the clear answer to the above questions is that Plaintiffs are engaging in forum shopping. Plaintiffs claim that they commenced the district court litigation a week after

filing the administrative claims (*id.*), but they omit the fact that they commenced the district court litigation on the same day that their response to Frontier's claims objection was due in the Bankruptcy Court. Had the Bankruptcy Court ruled on that claims objection it would have set into motion a full litigation schedule on those claims. The Court, therefore, should reject Plaintiffs' arguments, deny the motions to withdraw the reference, and grant the present motion to stay.

## CONCLUSION

For the foregoing reasons, Frontier respectfully requests that the Court stay this case until the Bankruptcy Court concludes its adjudication of Plaintiffs' claims filed in the Bankruptcy Court.

Date: September 2, 2021                                   \Respectfully submitted,


/s/ *Rubén Castillo*
Rubén Castillo (admitted *pro hac vice*)
Massimo F. D'Angelo
Ildefonso Mas (admitted *pro hac vice* )
**AKERMAN LLP**
71 South Wacker Drive
47th Floor
Chicago, Illinois 60606
Telephone:     (312) 634-5700

Austin Klar (Admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400